Let's get started. Our first case is 19-5111, United States v. Xiong, and Mr. Sandifer, you may proceed when you're ready. My name is Dean Sandifer from the Federal Defenders in Denver, and I'm here for Vang Xiong. It's undisputed that the District Court plainly erred by failing to include the element of intent in its instruction on constructive possession. So the key question on appeal is whether there is a reasonable probability that this mistake affected the jury's verdict on the gun counts. There is a reasonable probability, especially on the 924C count. The verdict form, the stipulation, and the jury instructions all make clear that the jury convicted on that count based on the shotgun. But the shotgun was in the backseat floorboard of a car jointly occupied by Mr. Xiong and his co-defendant. And in joint occupancy cases like this one, this court has repeatedly found a reasonable probability that this very same error affected the verdict. So turning first to the basis of the 924C conviction, we know it was the shotgun for several reasons. First and foremost was the verdict form, where the jury expressly found that he possessed the shotgun in convicting on that count. And the jury instructions told the jury they only had to find one firearm to convict. So this is strong evidence that the shotgun was the sole basis of conviction on that count. Okay, let me ask you a question about that. So the jury was presented with Government's Exhibit 7, I presume, the copy or the picture of the AR knockoff in the front seat? Yes. Was there a general instruction that would have allowed the jury to consider that gun? The 924C instruction did include that gun. That was part of what the jury could consider. So your position is it was confusing, though, because you had this constructive possession instruction with a specific box for finding that he possessed the shotgun. And that that drew all the attention away from the assault rifle. No, not necessarily. I think even aside from the verdict form, the shotgun was probably the basis of the jury's conviction, because it's not even clear they could convict on a Wasser 10 under the instructions that they were given. They had to find that it was a semi-automatic assault weapon, but they were never given a definition of that term. And there was never any expert evidence that it satisfied that definition, that it qualified as such. I mean, could the jury, from their own personal experience, make that determination? I mean, I'm just looking at the not very good picture of the weapon, and I can see the magazine and see that it's a multi-round semi-automatic weapon, just from my own personal experience. Could the jurors have made that finding as well? I mean, surely the jurors can bring their personal experience, but I don't think it's reasonable to assume that all of these jurors had experience with firearms or would really even know what an AK-47 style weapon was. I mean, it was described as an AK-47 style. Who knows what differences there are, whether those differences are relevant to the statutory definition, which in any event, they were never given. I'd point out, too, with the verdict form, I think the verdict form shows that the parties in the judge below didn't think that the Wasser 10 could serve as the basis for the 924C conviction. Otherwise, there was no reason to put in a special interrogatory on the shotgun. The only reason they did that was they thought only that gun could trigger the 10-year mandatory minimum. So wasn't there another reason? I mean, don't you, under the guidelines, can't you receive a larger sentence if you're using a sawed-off shotgun? Yeah, but under the guidelines, the judge can make the findings as long as it's not in excess of the statutory maximum. So there's no reason for a jury finding on that. I think that the discussion that led up to the inclusion of this special interrogatory on the verdict form, it's not in the record. I don't know why, but it was done off the record. But again, the only reasonable explanation for it is that they thought it was necessary to trigger the 10-year, that they didn't think the Wasser 10 could do it. Otherwise, there's no reason to include the special interrogatory because either gun could serve as the 10-year minimum. So as to the shotgun, the error in the constructive possession instruction was prejudicial because the intent to exercise control on that gun was weak. First, there's no evidence that he, Mr. Zhang, actually possessed that gun. So the jury necessarily relied on the constructive possession instruction, which was the one that was— Didn't a witness see that gun earlier in the day in Zhang's possession? Mr. Li said he saw it in the backseat of the car, which is where it was found. So again, there's no evidence that it was— And it was your client's car also. It was my client's car. That's true. But as we pointed out in the briefs, the jury had every reason to doubt Mr. Li's credibility on any points where he wasn't corroborated. He was a cooperator, and he got up on the stand and adamantly denied, even in the face of a 15-year mandatory minimum, that he said he didn't expect any benefit at all. That's incredible on its face, but it's especially incredible in light of the other cooperator's testimony, who was Mr. Li's friend, identically situated. He freely conceded that he expected a benefit. So I don't think— The jury must have—didn't the jury have to believe Mr. Li to convict on a drug conspiracy charge? No, not at all. Well, they had to believe him, but they also—the drug count was heavily corroborated by other evidence. So they could have thought, well— Counsel, wait a minute. You said no, not at all, but then they had—there was that response. Didn't the jury have to believe him? I think that was the chief's question. I do—maybe I misstated. I do believe that the jury credited him on the drug stuff, but I think they may have only done that because it was corroborated by the other cooperator, who didn't lie on the stand, and text messages. So in that situation, where he's corroborated by other evidence, the jury may have felt comfortable relying on him. But when there was no corroboration, as there wasn't with the guns, they may have been skeptical of him. And the jury instructions allowed them to do that. They said he can— Now, Counsel, they may be skeptical, but that's a fact question that they get to determine the credibility on, and your client got convicted. Isn't that correct? Yes, that's true, but what I'm trying to communicate is that they might have found him credible on the drug stuff only because it was corroborated by other evidence. And if there was no corroboration, but Mr. Lee testified to that, isn't that a jury question for the jury to determine the credibility of? It is, and I'm not disputing that the jury found him credible as to the drugs. What I'm suggesting is that that may have been solely because it was corroborated by other evidence. There was no similar corroboration on the firearms, and they didn't—I'm sorry, I just lost my train of thought. On the firearms, there was no other corroboration, and the jury didn't have to believe him to convict on the 922G or the 924C, because either of those could be based on the guns that were found in his car, not the handguns. Was the round that was found in the side pocket of the passenger seat, was that attributable to the shotgun in the back? No, that was from the Wasser 10, was the testimony of the—yes. And again, the officer testified that it looked like someone tried to clear a jam, which obviously would have required handling the firearm. But it's clear we know that that didn't happen on the scene, because the sniper could see the gun the whole time. Nobody ever touched it. If it didn't happen on the scene, who knows when it happened, who knows who did it? There's just no evidence of that in front of the jury. Let me ask you about the jury instruction, and we've had a number of these cases. And one question I've—well, maybe I'll ask both you and the government representative, but I've had four or five of these cases already on the jury instructions. And in this case, you do have some facts that some of the other cases don't have. You have—below the erroneous instruction, you do have an instruction that talks about the intent requirement. And then, you know, as I understand it, at the closing, the government, the prosecutor did state the correct language in describing what the jury had to do. What's your—what's your rebuttal to those points? Well, one, the jury is not going to give credence to the government's PowerPoint over the judge's instructions. The judge instructed the jury that they had to follow the instructions given by the judge. So any discrepancy that they even notice is going to be resolved in favor of the instruction, which was wrong. The joint possession instruction did have the intent requirement, but joint possession wasn't really the government's theory, especially not with the Wasser 10 and the shotgun, where they argued that he had exclusive control over them. They did not argue joint possession. And in any event, you know, what these two instructions did was basically set out two standards. One requires intent, one doesn't. So who knows which one the jury is necessarily going to follow. In terms of—I'm sorry, did you have a question? The other question I have, and I didn't mean to cut you off, but I presume the jury instructions have now been corrected in the district. And I was curious why the erroneous instruction lingered so long after the Supreme Court decision in Henderson. Yeah, I cannot answer that question. Unfortunately, I don't know why. I'll have that question also for Ms. Alon. She might have more knowledge about that. You know, one other point I'd like to make is that, you know, Judge Tempekovich, you mentioned that there have been several of these cases. And this case is actually quite similar to Samora, which was the most recent. Again, it was a car case. In that case, the defendant was the only person in the car, although this court treated it as a joint occupancy case because the car belonged to his ex-girlfriend. But the gun was found in the center console, which the court said was readily accessible to him. The gun even had his DNA on it, so the jury knew that he had handled it at some point. This case is weaker than Samora because, one, there's two people in this car, not just one. And, two, there's no evidence that he actually handled the gun, whereas in Samora, there was. Unless the court has further questions, I'd like to reserve the remainder of my time. Thank you, counsel. Let's hear from the government. Ms. Alon? Sorry. May it please the court, my name is Lina Alam. I represent the United States. I'd like to begin by addressing an anomaly, I think, in the jury instructions in the verdict form. Mr. Sanford is correct that to convict Mr. Zhang under 924C1B, the jury was required to find that he possessed the sawed-off shotgun in the backseat of the car. However, again, because of a curious anomaly in the law, even though 924C1B contains language referring to semi-automatic assault weapons, that enhancement under 924C1B ceased to apply when the sunset provision of the Public Safety and Recreational Firearms User Protection Act of 1994 sunsetted in 2004. So the reason that the verdict form asked that question about the sawed-off shotgun was that the only way Mr. Zhang could qualify for the 10-year statutory minimum under C1B was if he possessed the Wasser 10 in the backseat. The other gun, the semi-automatic assault weapon that was found next to him, would still qualify to support a conviction under 924C1A, which is a lesser included offense because it does not require the finding of a specific type of firearm. And that, I think, explains why the jury instructions did not ask or did not define semi-automatic assault weapon and why the verdict form did not inquire of the jury whether Mr. Zhang possessed a semi-automatic assault weapon. Have you got any other authority other than your construction of that? Do you have cases that hold that? Other than the legal effect of the statute, the 1994 statute that expired in 2004, thus removing the applicability of that enhancement for semi-automatic assault weapons. I have no case authority, just statutory authority, Your Honor. So as far as we're concerned today, is the assault rifle, do we just need not consider that? I mean, was the jury instructed in such a way that they could have found on the lesser included? The jury's finding of guilt on count three before the special verdict form would be sufficient to sustain Mr. Zhang's conviction on 924C1A as to the semi-automatic assault weapon. Okay, so then would you have a sentencing problem and we'd have to send it back? I mean, even if we found that we could sustain that, we'd have to go back for re-sentencing? If the court found that Mr. Zhang can show a reasonable probability that the outcome would have been different as to the sawed-off shotgun, yes, it would need to be remanded for re-sentencing. Assuming he can show that on the shotgun, tell us your position on whether we can uphold the conviction based on the Wasser 10. The Wasser 10 can be upheld either under a constructive or an actual possession theory, because as Mr. Li's testimony established, he saw that firearm in the backseat of Mr. Zhang's car earlier on the same day, and it was found in the front seat of Mr. Zhang's car that same day. Thus, circumstantial evidence supports his actual possession of the firearm on the date charged. Okay, can you tell me the instruction number that would have led the jury to that? The actual possession is defined in the same instruction as the constructive possession, so I don't know the instruction number, but it is on page 204 of Volume 1 of the record. All right, thank you. And it defines actual possession. And the, I'm sorry, my camera keeps shutting down. So as well, however, because the jury was correctly instructed that joint possession requires both the power and intent to exercise dominion and control, the jury could have found both that Mr. Zhang possessed both the Wasser 10 semi-automatic rifle and the sawed-off shotgun in the backseat under a theory of joint possession, satisfying both the elements of power and intention to control both of those guns. What factual basis would they have to determine that it was a semi-automatic weapon, though? They were not required to convict under C1A, they were not required to find it was a semi-automatic assault weapon. And in order to convict under C1B, they would have had to convict him of constructive possession of the Wasser 10. I think Judge Timkiewicz, you asked a question earlier. There is at least a possible interpretation from Mr. Lee's testimony and where the sawed-off shotgun was found that Mr. Zhang handled that firearm as well as the rifle that day because Mr. Lee testified that it was found in the backseat. And the sawed-off shotgun was actually found in the floorboard of the passenger side of the gun. However, because the evidence establishing Mr. Zhang's intent to possess both firearms was much stronger here than in any of the cases that we've discussed, Samora, Benford, or Simpson, the court could also affirm Mr. Zhang's conviction under 924 C1B of that sawed-off shotgun. In fact, as the facts demonstrate, Mr. Zhang exercised actual control over the other three guns and traveled to the point where the guns were seized that day in order to protect a large quantity of drugs that he had supplied to an individual he had only met the day before. And given that, and given the fact that Mr. Zhang was actually riding shotgun, the jury could easily infer his intention to exercise control not just over the rifle that was placed immediately next to him, but over the sawed-off shotgun that was positioned in such a way behind the driver's seat that it was readily accessible to Mr. Zhang, but not readily accessible to the driver, Mr. Lohr. Let me ask you a question about the instruction. So, the instruction you and I were discussing earlier, and you directed me to the vicinity of it, and I have found the instruction titled, Essential Elements of the Offense Charged in Count Three. Is that the one? That is not the instruction, the possession instruction. I believe that's... Okay, so the possession instruction is your 922G charge, right? Oh, I'm sorry. No, I don't mean the possession offense. There is a general possession instruction that is the one where the error in the constructive possession portion appears. And that applies to both. All right. There's one right before that. Statute defining the offense charged in count three? I believe, again, I believe that the general possession instruction, which defines possession, actual and constructive, and joint possession, as to both counts three and count four, is found at page 204 of volume one. Okay. And each individual charge has independent instructions that define the statute of the offense charge, the statute defining the offense, and the elements. But then the element of possession is defined generically in that one instruction on page 204. And that defines actual possession, constructive possession, and joint possession. And the omission of the words and intention are in that general possession instruction, which is why Mr. Zhang is challenging both counts three and count four based on that possession instruction. Okay. All right. And just briefly, I'd like to talk about Mr. Li's credibility. As the court has observed, the question of Mr. Li's credibility was a question for the jury. And the jury must have found him credible in order to convict him of both the drug and Mr. Zhang of both the firearm and the gun counts. Perhaps Mr. Sandiford finds it incredible that Mr. Zhang didn't know what to expect, didn't know what benefit he hoped to gain from the government. But the jury did find that credible and credited his testimony, which was corroborated, not just by Mr. Herr's testimony, but also by the cell phone records of the communications between Mr. Li, Jimmy the informant, and Mr. Zhang. All of which corroborated every part of Mr. Li's account of what happened both the day before and the day that Mr. Zhang was arrested. I mean, even if Mr. Li was not particularly credible, I mean, don't we have to view all this in a light most favorable to the jury verdict anyway, so we would give him the benefit of the doubt? Well, this is not a sufficiency challenge, and so the standard is somewhat different, but the burden does fall on Mr. Zhang to show a reasonable probability that the outcome would have been different. The real question here is whether the court on review can be comfortable that the outcome of the jury trial would have been the same, even with a correct instruction. And for several reasons, this court should be comfortable in this case. First, that the actual erroneous instruction correctly defined the requirements of joint possession. The gun that Mr. Sandford appears to be focusing on the sawed off shotgun in the back seat was found in a car with two individuals and therefore in determining whether to hold Mr. Zhang responsible for that gun. The jury would have had to refer to that joint possession instruction, which specifically referenced the intent to exercise dominion and control. Next, the jury instructions were read to the jury by the court. Unlike those, the actual the jury instruction provided or proffered to the jury by the government was shown on a PowerPoint, not once but twice, and the exact language emphasizing power and intention to exercise control was highlighted on each of those occasions. Finally, unlike, for example, in Simpson, the government here in closing argument emphasized the requirement that for constructive possession Mr. Zhang demonstrate his intention to exercise control and the attorney doing that closing argument specifically asked who had the intention to use those guns and specifically reference the evidence of Mr. Zhang's intention to use the firearms that day. Also, unlike Samora, Benford, and Simpson, here, the guns that Mr. Zhang is charged with possessing, the two in the car for count three, were large guns in plain view. They were not concealed, they were not in a closed center compartment, they were not found in a bag during a search warrant, one of them was literally next to him and the other in arms reach behind him. Under those circumstances, and given the context in which those guns were found, i.e., traveling 70 miles outside of Tulsa following another car to do a five pound drug deal, the jury easily could infer that Mr. Zhang intended to exercise dominion and control over both of those guns. For that reason, these facts are stronger than those in all three of these cases and only weaker than Little in the context of this being joint possession rather than sole possession as in Little. But here, unlike in Little and the other cases, the jury actually heard a correct instruction as to joint possession that included both the power and the intention to exercise dominion and control. For all those reasons, we would ask the court to affirm Mr. Zhang's conviction. Can you explain why there seemed to have been a delay in correcting the jury instruction after Henderson? I know it's not on the record, but can you explain what happened? Your Honor, I believe in this case it was purely inadvertent error, because obviously the government had the correct instruction, and had they or defense counsel noticed it, obviously that should have been corrected. Little was decided in 2016. Other than inadvertent omission, I can't even explain this. This was a Judge Egan case, and I cannot imagine circumstances under which that omission was intentional, particularly given that the language is correct in the sentence immediately following the error. All right, thank you. Some rebuttal time for Mr. Sandifer? Yes, thank you. I'd like to start by addressing the joint possession instruction. It is very unlikely that the jury relied on that instruction because joint possession was not the government's theory. If you look at the closing argument, what the government argued as to the guns found in Mr. Zhang's car was that he had exclusive possession of them. So the idea that the jury is going to look at this instruction on joint possession and use that when it wasn't the theory advanced to them seems pretty unlikely. Second, if you look at the joint possession instruction, it just conflicts with the constructive possession instruction. One of them requires intent, one of them improperly does not. So it's not as if the jury—who knows which one they decided to follow? Probably the constructive possession instruction, because that was the government's theory as to the shotgun. Exclusive possession, not joint possession. So on Ken Lee's credibility, you don't look at the evidence in light that is favorable to the government. You assess the strength of the government's case as a whole, and that includes assessing the strength of their witnesses. We're not asking you to make a credibility finding. Just recognize that the jury had reasons to doubt Mr. Lee. The jury did not necessarily believe Mr. Lee in whole. The 922G conviction, they could convict him and disbelieve him entirely because that conviction could have been based solely on the guns in Mr. Zhang's car. And as Ms. Alam pointed out, on the drugs, there was a lot of corroborating evidence, the text messages, Mr. Herr's testimony. So with that corroboration, they may have felt comfortable relying on him. But without corroboration— Let me ask you about that. I mean, so couldn't we also reach the conclusion in looking at this that his testimony regarding the drugs was corroborated by a lot of other evidence? So the jury decided he was, in fact, credible because with respect to the drugs, his testimony had been supported by so much other independent evidence? I think that that is possible, but I don't think you can assume that there's no reasonable probability that it could be different. I mean, the jury was instructed that they could believe him—believe any witness in whole, in part. They could disbelieve them entirely. You know, the jury was told, you don't have to believe everything they say. Just because they believed him on one thing doesn't mean they believed him on everything. And it stands to reason that they're going to believe him on stuff that's corroborated by reliable evidence. But when he's all the government has, they could be skeptical of that, especially because the government has to prove everything beyond a reasonable doubt. Could you respond to the point that they could have found actual possession because the shotgun had been moved from the seat to the foreboard? Well, one, nobody saw that happen, and two, his testimony is vague. I mean, he says it was in the backseat, but he didn't say on top of the backseat. There was nothing specific. His testimony is not necessarily inconsistent with where the gun was found. If somebody says in the backseat, they generally just mean in the backseat area. That could just as easily be the floorboard as the seat. But even if it was moved, there's no evidence. Nobody saw Mr. Zhang move it. Maybe Mr. Lord moved it. Maybe somebody else moved it. No one saw that happen. So I think that's a bit speculative. Let me ask you this in regards to the location of the shotgun. Was the butt of the gun facing toward the passenger seat? It was facing towards the passenger seat, but it was directly behind the center console, so it was easily accessible to either driver. Now, there was a police officer who testified that it would have been difficult for the driver to access it, but the jury had the photograph. This isn't something uniquely within police officer training and experience. They can look at it and see anybody could have reached back behind there. The gun was literally right in the middle. The handle was literally right in the middle behind the center console. But it would have been easier for the passenger than the driver? According to the police officer, but looking at the photograph, it's not at all clear that that's true. Unless the court has further questions, I've exceeded the remainder of my time. Thank you, counsel. We appreciate the arguments. And joining us via Zoom today, you are excused and the case shall be submitted.